### B. B. THOMAS v. THE STATE.

No. 5919.   Decided November 3, 1920.

**1.—Misdemeanor Theft—Ownership—Possession—Rule Stated—Joint Owners.**

The Statute provides where there are joint owners of property, possession may be alleged in either.   It must also be alleged that the property is in one of the owners who has the control and possession of it, and if they are all in possession it can be alleged in either owner; but, if one of the owners is in exclusive possession then it must be alleged in the party having the control, care, and management of the property.   Following Frazier v. State, 18 Texas Crim. App., 434, and other cases.

**2.—Same—Variance—Allegation—Proof.**

Where, the alleged stolen property was alleged to be in G. E. Reynolds, who was part owner thereof, but the proof showed that he had leased it thereafter to Joe Reynolds who placed it in possession of Murray, the variance was fatal between the allegation of ownership and possession, and the conviction cannot be sustained.

**3.—Same—Corpus Delicti.**

Where, upon trial of theft there was a failure to prove the *corpus delicti*, the conviction could not be sustained.

Appeal from the District Court of Shackelford.   Tried below before the Honorable W. R. Ely.

Appeal from a conviction of theft; penalty, a fine of five hundred dollars and fifteen days in jail.

The opinion states the case.

*Kirby,   King  &  Keeble,* for appellant.—On question of *corpus delicti:* Nolan v. State, 129 S. W. Rep., 1108; Sharp v. State, 197 S. W. Rep., 207.

On question of ownership: Bonner v. State, 125 S. W. Rep., 23; McKnight v. State, 156 id., 1189; Howard v. State, 178 id., 510, and cases cited in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of ownership: Suggs v. State, 143 S. W. Rep., 186; Linehart v. State, 33 Texas Crim. Rep., 504.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of theft and given fifteen days in jail and fined five hundred dollars.

The indictment contained three counts. Upon the second count the trial occurred, this being alone submitted to the jury for their consideration. It alleged the theft of fifteen bottles of whisky, being the property of G. E. Reynolds and taken from the possession of G. E. Reynolds.

The evidence discloses that G. E. Reynolds and five others had bought several cases of whisky at San Angelo about the time prohibition went into effect under the zone law. They carried it to the ranch of G. E. Reynolds in Shackelford County and deposited it in a cellar under a dug-out. The house above the cellar seems to have had two rooms, and that the cellar was entered from the outside; that the door through which one entered the cellar was plank and was always kept closed and locked with a Yale lock. There were two keys, both kept by G. E. Reynolds. In the latter part of September, 1919, he concluded to go to California and did go. On his return from California he went to Fort Worth where he resided and there spent several weeks before going to his property in Shackelford County. After he left and before his return the whisky disappeared. He says there were fifty quarts in the cellar when he left, and on his return it seems all of it had disappeared. The theory of the State was that during his absence appellant got fifteen quarts of the whisky. He further states that before going to California he had leased this property to Joe Reynolds, who the testimony indicates was his brother, and Joe Reynolds placed L. S. Murry in control of the property as well as his, Joe Reynold,' ranch a few miles away. G. E. Reynolds says that when he left for California he gave one of the keys to Murry, he retaining the other key. Murry denies getting the key from G. E. Reynolds, but says he got it later from his employer, Joe Reynolds. The evidence is uncontradicted and may be said to be conclusive that the cellar had not been entered by breaking. The door was intact, and was not in any way interfered with unless it had been by unlocking and entering by that means. Murry and Nathan Reynolds' testimony indicates there were forty or fifty quarts of whisky in the cellar, but it seems to be a conceded fact that all of it had disappeared from the cellar. Murry says he did not go into it; that he did not unlock the door or take any of the whisky out of the cellar, and so far as he knew the door had never been unlocked and the whisky taken out by that means; that he had the key. It may be conceded also as a fact that any of the interested parties in the whisky could get it at their pleasure, and some of them did. The only evidence in the case connecting appellant with the disap-

pearance of the whisky in any way is by an alleged confession through the witness Nathan Reynolds. He says that he had a conversation with appellant in November charging him with the theft, and that appellant denied having anything to do with it or taking the whisky; that he threatened to have appellant arrested and prosecuted. He says appellant took him to one side and stated that he got fifteen bottles of whisky from the cellar, and got it when the cellar was open. This witness testified that the whisky they had in the cellar was what he called Bourbon de Luxe whisky; that appellant brought him three bottles of whisky, but it was Sunny Brook and not Bourbon de Luxe. He further testified they had no such whisky in the cellar as Sunny Brook. This is the case on the *corpus delicti* and proof as to the theft.

There were exceptions to the charge, and various matters presented for revision. Out of this two propositions we think are presented, without going into a detailed review of all the questions: First, that possession was improperly laid in G. E. Reynolds, and, second, that the *corpus delicti* was not proved and the facts would not show that appellant committed the theft. The statute provides that where there are joint owners of property possession may be alleged in either. It is also the law that the property must be alleged in one of the owners who has the control and possession of it. If they are all in possession, it can be alleged in either owner, but if one of the owners is in exclusive possession of it and to the exclusion of the others, then it must be alleged in the party having the control, care and management of the property. This has been the subject of so many decisions we consider it hardly necessary to cite them, but we might cite, commencing with Frazier v. State, 18 Texas Crim. App., 434, and Bailey v. State, 18 Texas Crim. App., 426. Those cases were thoroughly considered and have been followed with unbroken regularity by the decisions of this court. That G. E. Reynolds was not in possession of the property is made apparent by his own testimony as well as other testimony in the case. The property was partly his and he seems to have been in possession of it until he leased it to Joe Reynolds, who placed it in possession of Murry. Joe Reynolds did not testify in the case. When G. E. Reynolds leased this property to Joe Reynolds, Joe Reynolds became the possessor, at least in a qualified way, under his lease, the owner of the property as against everybody except the superior title in G. E. Reynolds. Through his lease he would have superior title and control over G. E. Reynolds, the real owner. We think there is a clear variance between the allegation of ownership and possession in G. E. Reynolds and the fact that he had leased it and placed it in possession of Joe Reynolds, who had placed it in control of his agent and manager Murry

The sufficiency of the evidence is not discussed. The facts may be different upon another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*